UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FLORENTINO RODRIGUEZ, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| LABORATORY CORPORATION OF | : Civil Action No. 13-675 (GK) |
| AMERICA HOLDINGS, d/b/a | : |
| LabCorp, | : |
| | : |
| Defendant. | : |
| | : |

## MEMORANDUM OPINION

Plaintiff Florentino Rodriguez ("Rodriguez" or "Plaintiff") brings this action against Laboratory Corporation of America Holdings ("LabCorp" or "Defendant") for declaratory judgment, fraudulent misrepresentation, negligent misrepresentation, negligence, breach of contract, and breach of the covenant of good faith and fair dealing.

This matter is before the Court on LabCorp's Motion to Dismiss [Dkt. No. 16]. Upon consideration of the Motion, Opposition [Dkt. No. 17], and Reply [Dkt. No. 19], the entire record herein, and for the reasons stated below, Defendant's Motion is **granted.**

## I.  BACKGROUND

### A.  Factual Background[1]

Rodriguez was employed by the District of Columbia as an Urban Park Ranger.  FAC ¶ 6.  During his eleven years of employment in this capacity, he had "an exemplary record with no history of disciplinary problems or personal involvement with illegal drugs."  FAC ¶¶ 6, 7.

In or about April 2010, Rodriguez was randomly selected to submit a urine sample for drug testing pursuant to the District of Columbia's Mandatory Drug and Alcohol Testing Program for Safety-Sensitive Positions ("Drug Testing Program").  FAC ¶ 8; see 6-B D.C.M.R. § 3901 et seq.  Rodriguez's test results were positive for the presence of marijuana metabolites, and he was subsequently terminated from his employment.  FAC ¶¶ 21, 23.

Rodriguez does not allege that his test results were inaccurate, or that he had not used marijuana prior to providing his urine sample.  Instead, he alleges that LabCorp, who tested his urine and reported the result, failed to follow government-mandated procedures in doing so, thereby improperly causing his positive result to be reported to his employer.  Id. ¶¶ 9-23.

Rodriguez relies on certain provisions in Title 6 of the District of Columbia Municipal Regulations, and the United

---

[1]  Except where otherwise noted, the facts set forth herein are taken from the First Amended Complaint ("FAC") [Dkt. No. 15] and accepted as true.

States Department of Transportation regulations incorporated therein, which the District of Columbia has adopted in connection with its Drug Testing Program (collectively, "regulations" or "quality control regulations"). See 6-B D.C.M.R. § 3901 et seq.; 49 C.F.R. Part 40. The regulations require a testing laboratory to conduct both an initial screen and a confirmatory test before reporting a drug test as positive. 6-B D.C.M.R. § 3906.4; see also 49 C.F.R. § 40.87. To conduct the initial screen, the laboratory must use an enzyme-multiplied immunoassay technique ("EMIT") test. 6-B D.C.M.R. § 3906.4. If the initial screen is positive, the laboratory must then use a gas chromatography/mass spectrometry ("GCMS") test to confirm the positive result and quantify the precise concentration of drug metabolites. Id.

The regulations set "cutoff concentrations," which determine whether the initial screen and confirmatory test should be reported as positive. See 49 C.F.R. § 40.87(a). If a test result is below the cutoff, the laboratory must report it as negative. Id. § 40.87(b)-(c). If a test result is at or above the cutoff concentration, the laboratory must report it as positive. Id. § 40.87(b)-(c). In the case of a marijuana test, the relevant cutoff concentrations are 50 ng/mL for the initial screen and 15 ng/mL for the confirmatory test. Id. § 40.87 (a).

Rodriguez contends that "there is absolutely no evidence or information in the report provided to the District of Columbia indicating that he had a positive initial urine screen, i.e. over 50 ng/mL." FAC ¶ 12. Therefore, he argues LabCorp was not legally permitted to conduct a confirmatory test, or to report his test results as positive to the District of Columbia's Human Resources Department. FAC ¶¶ 13, 14, 21.[2] Rodriguez also claims that LabCorp performed the wrong type of testing because it administered a "qualitative test," and not the test specified in 6-B D.C.M.R. § 3906. FAC ¶¶ 15-16. On these grounds, Rodriguez maintains that he "was denied a fair test in compliance with District of Columbia government procedures." FAC ¶ 17.

## B. Procedural Background

On April 19, 2013, Rodriguez filed his original Complaint in the Superior Court for the District of Columbia, bringing claims against LabCorp for negligence, gross negligence, and breach of contract. On May 10, 2013, LabCorp removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

---

[2] LabCorp did not report Rodriguez's result directly to the District of Columbia's Human Resources Department. Instead, it first forwarded the results to Dr. Charles Moorefield, a Medical Review Officer ("MRO"), whose responsibility it was to "verify that the testing procedure was conducted properly." FAC ¶ 20; see also 49 C.F.R. § 40.123. Rodriguez alleges that Dr. Moorefield failed to properly review LabCorp's testing procedures. FAC ¶ 21. However, he has not named Dr. Moorefield as a defendant in the case.

[Dkt. No. 1]. LabCorp then moved to dismiss Rodriguez's Complaint [Dkt. No. 9], but subsequently withdrew its motion after the parties stipulated to permit Rodriguez to file an amended complaint. [Dkt. No. 13].

On August 2, 2013, Rodriguez filed his FAC, asserting claims against LabCorp for declaratory judgment, fraud, negligent misrepresentation, negligence, breach of contract, and breach of the implied covenant of good faith and fair dealing. See generally FAC [Dkt. No. 15]. The FAC also includes claims against "John Doe" Defendants for intentional interference with prospective economic advantage and intentional interference with business relations. FAC ¶¶ 64-85.[3]

On August 23, 2013, LabCorp moved to dismiss the FAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Dkt. No. 16]. On September 5, 2013, Plaintiff filed his Opposition. [Dkt. No. 17]. On September 24, 2013, LabCorp filed its Reply. [Dkt. No. 19].

## II.  STANDARD OF REVIEW

---

[3] The "John Does" are described as employees of LabCorp who were involved in the testing and reporting of Rodriguez's drug test results. See FAC ¶ 5. Although Rodriguez identifies one of these individuals in his Opposition as Kamlesh Patel, Pl.'s Opp'n at 3, there is no indication that Rodriguez has attempted to serve Mr. Patel, or any person other than LabCorp, with his complaint.

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A pleading that offers mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice; nor will "naked assertions devoid of further factual enhancement." Id. (quoting Twombly, 550 U.S. at 557) (internal punctuation omitted). The factual allegations "must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and to permit the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." Stewart v. Nat'l Educ. Ass'n, 471 F.3d 169, 173 (D.C. Cir. 2006) (citation omitted). A court may also consider documents of undisputed authenticity that "are referred to in the complaint and are integral to" the

plaintiff's claims. <u>Kaempe v. Myers</u>, 367 F.3d 958, 965 (D.C. Cir. 2004) (citation omitted).

The court is required to accept the complaint's factual allegations as true and give a plaintiff "the benefit of all inferences that can reasonably be drawn from such allegations." <u>Kaempe</u>, 367 F.3d at 963 (citation omitted). However, the court need not accept plaintiff's legal conclusions couched as factual allegations. <u>Jacobs v. Vrobel</u>, 724 F.3d 217, 221 (D.C. Cir. 2013). Nor must it accept "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint," or by other documents properly considered in connection with the motion to dismiss. <u>Kaempe</u>, 367 F.3d at 963 (citations omitted).

## III. ANALYSIS

### A. Materials Considered in This Motion to Dismiss

In support of its Motion, LabCorp has submitted excerpts of the Report it prepared in connection with Rodriguez's test. These excerpts, the authenticity of which Rodriguez does not dispute, include pages labeled "Specimen Test Results," "Specimen Summary," "Initial Test Data Section," and "Confirmation Test Data Section." <u>See</u> Decl. of Robert I. Steiner in Support of LabCorp's Reply ("Steiner Decl."), Ex. A [Dkt. No. 19-1]. Rodriguez refers to these pages repeatedly in his FAC; indeed, they provide the sole factual underpinning for

-7-

his contention that LabCorp failed to comply with the quality control regulations.  <u>See</u> FAC ¶¶ 12, 15, 16, 18 & n.1. Accordingly, they are both incorporated by reference in the FAC and central to Rodriguez's claims.  The Court may therefore consider them in deciding the Motion.

**B.  Declaratory Judgment**

In Count 1, Rodriguez asks the Court to enter a "declaratory judgment that defendant LabCorp was under a duty and obligation to fully comply with federal and District of Columbia government drug testing procedures pursuant to its contract with [the] District of Columbia government and failed to do so."  FAC ¶ 35.

LabCorp seeks to dismiss this claim on the grounds that it is duplicative of Rodriguez's other claims.  Def.'s Mot. at 8-9. Rodriguez contends that dismissal is improper because the Federal Rules of Civil Procedure "permit[] parties to 'set forth two or more statements of a claim or defense alternately or hypothetically,' and to 'state as many separate claims or defenses as the party has regardless of consistency.'"  Pl.'s Opp'n at 14-15 (citing <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 805 (1999) (quoting Fed. R. Civ. P. 8(e)(2))).

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an

appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). This language "has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 136 (2007) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995)); see also Green v. Mansour, 474 U.S. 64, 72 (1985) ("[T]he declaratory judgment statute is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.") (citation omitted).

Although Rodriguez is correct that he is allowed to plead in the alternative, he has not articulated any reason to maintain the declaratory judgment claim as a separate cause of action. The claim does not present any legal or factual theories that are not already subsumed in his other claims. See Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th Cir. 2007) ("To the extent [plaintiff] seeks a declaration of defendants' liability for damages sought for his other causes of action, the claim is merely duplicative and was properly dismissed."). Further, Rodriguez does not identify any way in which his future actions are likely to be affected by the declaratory relief he seeks. See Schulman v. J.P. Morgan Inv. Mgmt., Inc., 35 F.3d 799, 812

(3d Cir. 1994) ("Even if a declaratory judgment would clarify the parties' legal rights, it should ordinarily not be granted unless 'the parties' plans of actions are likely to be affected by a declaratory judgment."). Accordingly, Count 1 shall be **dismissed**.

## C.   **Fraudulent Misrepresentation**

In Count 2, Rodriguez brings a claim for fraudulent misrepresentation. To plead a prima facie claim for fraudulent misrepresentation, a plaintiff must allege "(1) a false representation (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with intent to deceive, and (5) action [ ] taken in reliance upon the representation." Atraqchi v. GUMC Unified Billing Servs., 788 A.2d 559, 563 (D.C. 2002).[4] A false representation "is an assertion that is not in accord with the facts." Saucier v. Countrywide Home Loans, 64 A.3d 428, 438-39 (D.C. 2013) (citations and internal punctuation marks omitted).

Because fraud claims are subject to a heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure, a plaintiff "must state the time, place and content of the false misrepresentations, the fact misrepresented and

---

[4] The parties agree that District of Columbia substantive law applies to Plaintiff's claims. See Def.'s Mot. at 10 (citing District of Columbia law as source of applicable standard); Pl.'s Opp'n at 5 (same).

-10-

what was obtained or given up as a consequence of the fraud."
United States ex rel. Joseph v. Cannon, 642 F.2d 1373, 1385
(D.C. Cir. 1981). However, "intent, knowledge, and other
conditions of a person's mind may be alleged generally." Fed.
R. Civ. P. 9(b).

Rodriguez's fraud claim is deficient in several respects.
First, he fails to identify any particular misrepresentation by
LabCorp. His sole allegation pertaining to this element is that
LabCorp's employees "failed to disclose accurate information and
made false representations to the District of Columbia and the
plaintiff regarding results and procedures used in [his] drug
test." FAC ¶ 39. This allegation is too generalized and
conclusory to satisfy Rule 9(b)'s heightened pleading
requirement. It fails to specify the time, place, or content of
LabCorp's employees' misrepresentations. As previously noted,
Rodriguez does not allege that his test results were factually
inaccurate.[5] Instead, his theory is that LabCorp used improper
testing procedures. However, as discussed below, this
contention is premised entirely on LabCorp's own Report.

---

[5] In its Motion to Dismiss Rodriguez's original Complaint,
LabCorp pointed out that "Plaintiff does not allege that his
test results were inaccurate or that he had not engaged in
marijuana use prior to providing his urine sample; he simply
claims that LabCorp should not have performed the confirmatory
test and then reported the results to the MRO." See Def.'s Mot.
to Dismiss [Original Compl.] at 2 [Dkt. No. 9]. Rodriguez had
the opportunity to address this point in his FAC, but did not do
so.

Accordingly, it is entirely unclear what specific statement or other communication by LabCorp was false or misleading.

Second, "[a] plaintiff may recover for a defendant's fraudulent statement only if the plaintiff took some action in reliance on that statement." Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 22-23 (D.C. Cir. 2008) (citing Va. Acad. of Clinical Psychologists v. Grp. Hosp. & Med. Servs., Inc., 878 A.2d 1226, 1237-38 (D.C. 2005)). Rodriguez does not claim that he himself relied on LabCorp's Report. Instead, he contends that he may recover for fraud based on the District of Columbia's reliance. However, he cites no District of Columbia case to support this contention, and our Court of Appeals has rejected the argument that a third party's reliance satisfies the reliance element of common-law fraud. See id. at 23 (affirming dismissal of common-law fraud claim because "[r]ather than suggesting its own reliance, [plaintiff] says the PTO relied on [defendant's] alleged misrepresentation"). Therefore, Rodriguez has not made out the element of reliance.[6]

---

[6] Plaintiff cites Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 655-57 (2008) for the proposition that third-party reliance satisfies the reliance element of fraud. Pl.'s Opp'n at 17-18. In Bridge, the Supreme Court considered third-party reliance in the context of a civil RICO claim premised on violations of the federal mail fraud statute. The Court observed that "it may be that first-party reliance is an element of a common-law fraud claim," but emphasized that the case before it concerned a "statutory offense that is distinct from common-law fraud." Id. at 656 (both emphases added). Since Rodriguez brings a claim

-12-

Third, beyond a formulaic recitation of the elements of fraud, Rodriguez has not alleged any facts suggesting that LabCorp or any of its employees knew or believed the Report was inaccurate, or intended to deceive Rodriguez, or anyone else, by providing false information.

For each of these reasons, Rodriguez fails to state a claim for fraudulent misrepresentation. Count 2 shall be **dismissed.**

### D. Negligent Misrepresentation

In Count 3, Rodriguez brings a claim for negligent misrepresentation. The elements of negligent misrepresentation are similar to the elements of fraud, but do not include the element of fraudulent intent. Thus, "[t]o establish negligent misrepresentation by a defendant, a plaintiff must show that:

1.  The defendant negligently communicated false information[,]

2.  The defendant intended or should have recognized that the plaintiff would likely be imperiled by action taken in reliance upon [the] misrepresentation[,] [and]

3.  The plaintiff reasonably relied upon the false information to his [or her] detriment.

Hall v. Ford Enters., Ltd., 445 A.2d 610, 612 (D.C. 1982) (citing Restatement of Torts 2d § 311 (1965); W. Prosser, Torts, § 107, at 704-10 (4th ed. 1971)).

---

for common law fraud under District of Columbia law, not a claim under the civil RICO provisions, Bridge is inapposite.

Rodriguez fails to make out the elements of negligent misrepresentation for largely the same reasons that he fails to state a claim for fraud, namely, that he has not identified any false information communicated by LabCorp, and does not claim that he himself relied on such information. Therefore, Count 3 shall be **dismissed**.

### E. Negligence

In Count 4, Rodriguez brings a claim for negligence. The elements of negligence are the existence of "a duty of care, breach of that duty, and injury proximately caused by that breach." Odemns v. Dist. of Columbia, 930 A.2d 137, 143 (D.C. 2007) (citation and quotations marks omitted).

The parties address a significant portion of their papers to the issue of whether LabCorp owed Rodriguez a duty of care. See Def.'s Mem. at 12-14; Pl.'s Opp'n at 6-14; Def.'s Reply at 3-7. Whether a defendant owed the plaintiff a duty of care is a question of law to be decided by the court, with an eye to whether "injury to [the plaintiff] was reasonably foreseeable to the defendant" at the time of the accident. Haynesworth v. D.H. Stevens Co., 645 A.2d 1095, 1098 (D.C. 1994). The court must also consider whether any applicable statutes or regulations create such a duty. Odemns, 930 A.2d at 143 (citing Jarrett v. Woodward Bros., Inc., 751 A.2d 972, 980 (D.C. 2000)).

-14-

Although the District of Columbia Court of Appeals has not addressed whether a commercial laboratory owes a duty of care to drug-testing subjects, many other courts have recognized the existence of such a duty. See, e.g., Cooper v. Lab. Corp. of Am. Holdings, Inc., 150 F.3d 376, 379 (4th Cir. 1998) ("The overall trend is for courts to recognize the existence of a limited duty on the part of the laboratory to employees who are the subject of the tests."); Quisenberry v. Compass Vision, Inc., 618 F. Supp. 2d 1223, 1230 (S.D. Cal. 2007) ("To [decline to recognize such a duty] would mean to deprive thousands of individuals from an opportunity to challenge or receive any recourse for the repercussions they may suffer due to negligently performed laboratory tests producing erroneous or inaccurate test results."); Chapman v. LabOne, 460 F. Supp. 2d 989, 1001 (S.D. Iowa 2006) (finding a duty because defendant laboratory "was aware it was testing employee samples, and accordingly, could anticipate that harm could come to the employee as a result of [its] negligent behavior in processing the sample").

In fact, although LabCorp contends that it did not owe Rodriguez a duty of care, at least two of the cases it cites to support its position hold that drug testing laboratories do owe such a duty. See Nehrenz v. Dunn, 593 So. 2d 915, 918 (La. Ct. App. 1992) (sustaining negligence claim of terminated employee

against laboratory); <u>Elliott v. Lab. Specialists, Inc.</u>, 588 So. 2d 175, 176 (La. Ct. App. 1991) ("The risk of harm in our society to an individual because of a false-positive drug test is so significant that any individual wrongfully accused of drug usage by his employer is within the scope of protection under the law."), <u>writ denied</u>, 592 So. 2d 415 (La. 1992).

As these cases have recognized, it is entirely foreseeable that an employee who submits a specimen for drug testing will suffer adverse effects to his or her employment if the laboratory erroneously reports a positive result. The District of Columbia's regulations expressly provide for termination of employment following a positive drug test. <u>See</u> 6-B D.C.M.R. § 3907.1 ("The following shall be grounds for termination of employment . . . (a) A confirmed positive drug test result . . . ."). Moreover, the District of Columbia and the United States Department of Transportation have both enacted regulations requiring drug testing laboratories to implement quality control procedures, presumably to protect against the danger of a false positive. <u>See</u> 6-B D.C.M.R. § 3901 <u>et seq.</u>; 49 C.F.R. Part 40, Subpart F. Thus, it is fully consistent with general tort principles and the tendency of the courts to hold, and this Court does hold, that commercial laboratories, such as LabCorp, owe a duty of care to drug testing subjects, such as Rodriguez.

However, as discussed, Rodriguez has not alleged that his test results were inaccurate, only that LabCorp's violation of certain procedural requirements caused the results to be erroneously reported to his employer. Whether LabCorp's duty to Rodriguez included strict compliance with these procedural requirements, and whether a plaintiff, such as Rodriguez, can demonstrate proximate causation where he does not allege that his test results were inaccurate, are open questions.[7] However, the Court need not reach these questions because there is a more fundamental problem with Rodriguez's negligence claim, namely that the FAC does not support the "reasonable inference," Iqbal, 556 U.S. at 678, that LabCorp violated any procedural requirement.

As previously discussed, Rodriguez alleges that LabCorp breached its duty to comply with the quality control regulations in two respects, first, by not obtaining a positive initial screen prior to conducting a confirmatory test, and second, by not using the immunoassay methodology required by 6-B D.C.M.R. § 3906. With respect to the first theory, the sole factual

---

[7] The Court notes that the quality control regulations require a laboratory to store a urine specimen, and if the specimen is confirmed positive, to notify the employee of his or her right to send the stored sample to another certified laboratory for confirmation of the positive result. See 6-B D.C.M.R. § 3906.5. There is no evidence Rodriguez ever availed himself of this right.

-17-

allegation to support it is in paragraph 12 of the FAC, which contends:

> [T]here is absolutely no evidence or information in the report provided to the District of Columbia indicating that [Rodriguez] had a positive initial screen, i.e., over 50 ng/mL. No where [sic] in the report from LabCorp is it indicated that the initial test met or exceeded the 50 ng/mL cutoff level.

FAC ¶ 12.

However, the Report states in two separate places that LabCorp did conduct an initial screen of Rodriguez's specimen, and that such screen exceeded the concentration cutoff of 50 ng/mL. First, on a page titled "Specimen Test Results," the Report lists both a "screening" and a "confirm" test, defines the "Screening Cutoff" as 50 ng/mL, and indicates that the collective results of the "screening" and "confirm" tests conducted on Rodriguez's specimen were "POSITIVE." See Steiner Decl., Ex. A at 6. Second, on a page titled "Specimen Summary," the Report states:

> Initial Test Results (Immunoassay): Presumptive positive for Cannabinoid
>
> Confirmation Test Results (GC/MS): Positive for Marijuana Metabolite: 48 ng/ml

Id. at 1.

In short, Rodriguez's contention that "[t]here is absolutely no evidence or information in the report" that his specimen had a positive initial screen is squarely contradicted

-18-

by the Report itself. Consequently, the Court cannot accept the allegations in Paragraph 12 of the FAC as true.

With respect to Rodriguez's second theory as to how LabCorp breached its duty of care, he contends:

> It is . . . clear that LabCorp performed the wrong kind of test, i.e., it did not administer the enzyme multiple immunoassay technique (EMIT) test as required by D.C. municipal regulation 6-B D.C.M.R. § 3906. The test administered by LabCorp, in its own words, was a 'qualitative' test which 'should not be used to determine the concentration of drug or drug metabolite present in specimens.'

FAC ¶ 16. Rodriguez quotes directly from the "Initial test Data Section" of the Report to support this allegation. See FAC ¶ 16, n.1.

Again, Rodriguez's allegations about the Report are directly contradicted by the Report itself. The Report states in at least three different places that LabCorp first used an immunoassay test, which is a qualitative test, to conduct the initial screen, and then used a GCMS test, which is a quantitative test, to confirm the positive result and measure the precise concentration of drug metabolites present in Rodriguez's sample. See Steiner Decl., Ex. A at 1, 2, 7, 16. This is what the regulations require. See 6-B D.C.M.R. 3906.4 ("[T]he vendor shall split each sample and perform enzyme-multiplied immunossay [sic] (EMIT) testing . . . A positive EMIT test shall be confirmed . . . using the gas

-19-

chromatography/mass spectrometry (GCMS) methodology."); see also

Skinner v. Ry. Labor Execs. Ass'n, 489 U.S. 602, 610 (1989)

("While drug screens may be conducted by immunoassays . . .

positive drug findings are confirmed by gas chromatography/mass

spectrometry. These tests, if properly conducted, identify the

presence of . . . drugs in the biological samples tested with

great accuracy.") (quoting United States Dep't of Transp. Field

Manual: Control of Alcohol and Drug Use in Railroad Operations

B-12 (1986) (quotation marks and brackets omitted)); Nat'l

Treasury Employees Union v. U.S. Customs Serv., 27 F.3d 623, 625

(D.C. Cir. 1994) ("The laboratory to which specimens are sent

will first employ an immunoassay test; any sample identified as

positive will then be tested using gas chromatography/mass

spectrometry (GC/MS) techniques.") (citation omitted).[8]

While the Court would ordinarily be required to accept

Plaintiff's factual allegations as true at this stage of the

proceedings, his allegations rely on a document that expressly

contradicts the conclusions he draws from it.    Therefore, the

Court is not required to accept such allegations as true.    See

Kaempe, 367 F.3d at 963 (citing Veney v. Wyche, 293 F.3d 726,

730 (4th Cir. 2002)).    Further, without any other factual

---

[8] The Report does not specify that LabCorp used an "enzyme-multiplied" immunoassay technique, as opposed to a different type of immunoassay.  However, Rodriguez does not allege that LabCorp performed the wrong type of immunoassay test, and the Report does not suggest as much.

allegations to support his claim that LabCorp breached its duty of care, or any contention that the test result was erroneous or inaccurate, Rodriguez's negligence claim does not satisfy the plausibility standard of Twombly and Iqbal. Accordingly, Count 4 shall be **dismissed.**

### F.    Intentional Interference Claims

In Counts Five and Six, Rodriguez brings claims for intentional interference with prospective advantage and intentional interference with business relations.

LabCorp did not address these claims in its moving papers, and Rodriguez contends, therefore, that such claims may not be dismissed. Pl.'s Opp'n at 5-6. LabCorp counters in its Reply brief that it was not required to seek dismissal of Counts 5 and 6 because the FAC brings them against the "John Doe" Defendants only, and not against LabCorp. Def.'s Reply at 12. LabCorp further argues that even if it was named as a defendant in Counts 5 and 6, the claims should be dismissed for failure to state a cause of action. Id. at 13-15. The Court agrees.

LabCorp is correct that the intentional interference claims state that they are brought against the "John Does" and do not mention LabCorp. Rodriguez now contends (in his Opposition to LabCorp's Motion) that LabCorp is vicariously liable for the conduct of the John Does, none of whom have been served with the FAC. Pl.'s Opp'n at 5-6. The FAC does not assert this theory

in Counts 5 and 6, and therefore LabCorp was not required to address those counts in its moving papers.

Even if Rodriguez had named LabCorp as a defendant in Counts 5 and 6, he has not stated a cause of action for intentional interference with prospective economic advantage or intentional interference with business relations. To establish either claim, a plaintiff must allege facts setting forth: (1) the existence of a valid business relationship or expectancy; (2) the defendant's knowledge of the relationship or expectancy; (3) the defendant's intentional interference with the relationship or expectancy; and (4) resulting damages. See NCRIC, Inc. v. Columbia Hosp. for Women Med. Ctr., Inc., 957 A.2d 890, 900 & n.18 (D.C. 2008); Casco Marina Dev., L.L.C. v. D.C. Redevelopment Land Agency, 834 A.2d 77, 84 (D.C. 2003).

There is not a single factual allegation in the FAC plausibly suggesting that LabCorp (or anyone else) intended to interfere with Rodriguez's employment relationship with the District of Columbia. The mere awareness that Rodriguez could be adversely affected by a positive test result is insufficient. As our Court of Appeals has observed:

> As its name would suggest, intentional interference requires an element of intent. . . . [A] general intent to interfere or knowledge that conduct will injure the plaintiff's business dealings is insufficient to impose liability.

*Bennett Enterprises, Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995) (emphasis in original) (citation and quotation marks omitted). Because there are no facts suggesting that LabCorp, or any of its employees, acted with a desire or purpose to interfere with Rodriguez's employment, the Court shall **dismiss** the intentional interference claims at Counts 5 and 6.[9]

### G. Breach of Contract

In Count 7, Rodriguez brings a claim for breach of contract. A claim for breach of contract includes four elements: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsinolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009) (citation omitted). Rodriguez contends that LabCorp's contract with the District of Columbia required compliance with the quality control regulations. He further claims that he has standing as a third-party beneficiary to enforce this aspect of the contract, which LabCorp disputes. See Def.'s Mot. at 14-17; Pl.'s Opp'n at 20-22.

---

[9] Having so concluded, the Court does not reach LabCorp's alternate contention that an "at-will" employment contract, such as the one between Rodriguez and the District of Columbia, cannot, as a matter of law, satisfy the first element of an intentional interference claim. Def.'s Reply at 14 (citing *Zelaya v. UNICCO Serv. Co.*, 587 F. Supp. 2d 277, 286-87 (D.D.C. 2008)).

Whatever the merits of Rodriguez's third-party beneficiary theory, his breach of contract claim, like his other claims, is predicated on the contention that LabCorp violated the quality control regulations. As already noted, he pleads no facts plausibly suggesting LabCorp violated any of these provisions. Accordingly, even assuming that the contract between LabCorp and the District of Columbia required compliance with the regulations, and that a drug testing subject has standing to enforce this requirement, Rodriguez still would not state a claim for breach of contract. Therefore, Count 7 shall be **dismissed.**

**H.  Breach of the Covenant of Good Faith and Fair Dealing**

Finally, at Count 8, Rodriguez brings a claim for breach of the covenant of good faith and fair dealing. "Under District of Columbia law, every contract contains within it an implied covenant of both parties to act in good faith and damages may be recovered for its breach as part of a contract action." Choharis v. State Farm Fire & Cas. Co., 961 A.2d 1080, 1087 (D.C. 2008) (citation omitted).  This covenant means that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  Allworth v. Howard Univ., 890 A.2d 194, 201 (D.C. 2006) (citations omitted).  "To state a claim for breach of the implied covenant of good faith and fair dealing, a

plaintiff must allege either bad faith or conduct that is arbitrary and capricious." Wright v. Howard Univ., 60 A.3d 749, 754 (D.C. 2013).

Rodriguez was not a party to the contract between the District of Columbia and LabCorp. The mere fact that he may have been one of thousands of beneficiaries of a specific quality control provision contained in that contract does not mean that LabCorp generally owed him a contractual duty of good faith and fair dealing. Further, there are no facts in the FAC suggesting that LabCorp or any of its employees operated in bad faith or in an arbitrary and capricious manner at any time. Accordingly, Count 8 shall be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion is **granted**, and the FAC shall be **dismissed**.  An Order shall accompany this Memorandum Opinion.


February 4, 2014                    Gladys Kessler
                                   United States District Judge


**Copies to**: attorneys on record via ECF